Common Pleas Court of Hamilton County.

CITY OF CINCINNATI V. BD. OF EDUCATION.

Decided July 19, 1933.

*John D. Ellis*, city solicitor, for the plaintiff.
*Dinsmore, Shohl & Sawyer*, for the defendant.

DARBY, J.

The plaintiff in this case is the city of Cincinnati, a municipal corporation; the defendant is the Board of Education of the School district of the city of Cincinnati, a body politic.

The petition was filed June 19, 1928; by it, the plaintiff seeks to recover from the defendant, $389,625.81 with interest, "upon an account for water furnished by plaintiff to defendant at defendant's instance and request * * *." Attached to the petition is a copy of the account, setting forth the amount of water furnished by the city to the defendant from May 11, 1920 to May 1928. The schools to which the water was furnished are all within the municipality of the city of Cincinnati.

An answer was filed, setting forth a number of defenses, and it was conceded that the six year Statute of Limitations applied to a certain part of the account.

A jury was waived, and the cause submitted to the court.

Upon the trial of the case, the city offered in evidence the accounts attached to the petition. The defendant offered no evidence, but moved for judgment upon the pleadings and the evidence.

Briefly, the action is on an account, and no evidence was offered of any express contract or agreement to pay for the water furnished.

The claim of the defendant was that the water furnished by the city to the schools of the city, was not to be paid for by virtue of the provisions of Section 3963, General Code, which provides in substance that no charge shall be made by a city for supplying water for the use of public school buildings in such city.

The answer of the city to that claim is that that section is unconstitutional and has been so declared by the Supreme Court of the state. The section referred to has been the subject of much controversy in the courts, resulting in contrary decisions.

As recently as May 1925, the constitutionality of the section was upheld by reason of the provision of the Constitution of the state that the concurring vote of six judges of the Supreme Court was necessary to declare a law unconstitutional.

In *East Cleveland* v. *Bd. of Edn.*, 112 O. S. 607, on error to the Court of Appeals of Cuyahoga county, the section in question was sustained by the affirmative votes of Jones and Day, JJ., while the other five judges concurred in an opinion that the section was unconstitutional.

The section was again before the Supreme Court in April 1928, in the case of *Bd. of Edn.* v. *Columbus*, 118 O. S., 295. In that case five judges (excepting Jones and Day, JJ.) concurred in holding that Section 3963, General Code was unconstitutional, and void upon several grounds. This decision, however, came practically at the end of the period included in the action of the plaintiff in this case.

It is clear, however, that the city and the school board acted upon the theory of the validity of the section, and it was not until after the law was definitely declared to be unconstitutional, that action was taken by the city to col-

lect for the water furnished during the course of more than eight years.

It is not claimed by the plaintiff that there was an express contract, and in its answer, which is not denied, the defendant specifically claims that there was no contract between the city of Cincinnati and the Board of Education to supply water or to pay for it.

The claim of the defendant on its motion for judgment is that the board of education is not liable on an implied contract; that it is therefore not liable upon a mere account and it cannot be held upon a *quantum meruit.*

The case of *Knowlton & Breinig* v. *Board of Education,* 13 O. A. R., 30, involved a claim of a contract against the board of education for a balance due upon a contract to improve a building for which bonds had been issued. There is a long discussion of the matter involved, the cases and statutes, and the court reaches conclusions as follows:

"1.   Under the provisions of Section 5660, General Code, when money for a public building is to be derived from the sale of lawfully authorized bonds, a contract for such improvement or any part thereof, is void unless the auditor or clerk of the board first certifies that the money required for the payment of such obligation or appropriation is in the treasury to the credit of the fund from which it is to be drawn.

\* \* \* \* \* \* \* \* \*

"3.   The restrictive statutes of the state are enacted for the general good and for protection not only of the contractor but also of the taxpayer, and their provisions will be strictly adhered to, and it devolves upon those who deal with public officials to see for themselves that the statutes have been complied with."

In this case the court affirmed the ruling of the Common Pleas Court sustaining demurrers to the petition and amended petition, and rendered final judgment for the board of education.

In the consideration of that case, the court discusses in particular, *City of Welston* v. *Morgan,* 65 O. S., 219, p. 228 as follows:

"There being no implied municipal liability in cases *ex contractu* under our restrictive statutes it follows that to state a good cause of action against a municipality in

such cases, the petition must declare upon a contract, agreement, obligation or appropriation made and entered into according to statute. A petition on an account merely or *quantum meruit* in such cases is not sufficient."

The case of *Hommel & Co.* v. *Woodsfield* (Village), 115 O. S., 675, was twice before the Supreme Court. In the first case it was on an action upon an account for furnishing material to the village, which the village received and used, but successfully defended against for the reason that the contract for such material was made in violation of one of the restrictive statutes referred to. In that case the specific statute required that contracts for more than five hundred dollars must first be authorized by council and advertised as provided by the statute. The court held that this contract was for more than five hundred dollars and also—

"2. When either the requirement of authorization and direction of ordinance of council, or of advertisement for bids has been omitted, such contract imposes no valid obligation upon the village."

In that case the authorities were again carefully examined and in the opinion on p. 680 the court say:

"The petition then prays for judgment upon the agreement. This was necessary, for to state a good cause of action against a municipality in matters *ex contractu* the petition must declare upon a contract, agreement, obligation or appropriation made or entered into according to statute. A petition on an account merely in such cases is not sufficient. *City of Welston* v. *Morgan*, 65 O. S., 219, 62 N. E., 127. The petition states an action upon an account arising out of the agreement listing debts and credits, and praying for judgment for the balance alleged to be due."

The second time this case of *Hommel & Co.* v. *Woodsfield* was before the Supreme Court, it was on an action for conversion of the material sued for in the former case, and the court held upon the same reasoning, that the contract it entered into imposed no valid obligation upon the village, and that the plaintiff was not entitled to recover. (122 O. S., 148)

Section 5660, General Code, which was in force at the

time most of the water was furnished according to the account, provided:

"The commissioners of a county, the trustees of a township and the board of education of a school district shall not enter into any contract, agreement or obligation involving the expenditure of money, or pass any resolution or order for the appropriation or expenditure of money unless the board or clerk thereof respectively, first certifies that the money required for the payment of such obligation or appropriation is in the treasury to the credit of the fund from which it is to be drawn, or has been levied and placed on the duplicate and in process of collection, and not appropriated for any other purpose; money to be derived from lawfully authorized bonds sold and in process of delivery shall, for the purposes of this section, be deemed in the treasury and in the appropriate fund. Such certificate shall be filed and forthwith recorded, and the sum so certified shall not thereafter be considered unappropriated until the county, township or board of education is fully discharged from the contract, agreement or obligation, or as long as the order or resolution is in force."

Section 5661, General Code, at that time provided:

"All contracts, agreements or obligations and orders or resolutions entered into or passed contrary to the provisions of the next preceding section, shall be void, but such section shall not apply to the contracts authorized to be made by other provisions of law for the employment of teachers, officers and other employees of boards of education."

It would be difficult to find more explicit language than is contained in those sections. When they were amended in March 1925, as part of the Act "To provide for a balanced budget system for all taxing districts and political subdivisions of the state, etc.," they were made more explicit than theretofore. (See 111 O. L., 371.) In that Act it is provided that the fiscal year of boards of education shall begin January 1, 1926. Section 7 of the law (see p. 375) re-enacts and amends Section 5660, General Code.

It would serve no good purpose to set forth the long provisions of the section referred to, but the general requirement is that no contract calling for the expenditure of public funds shall be made or assumed by any officer unless the certificate provided for is made. In like manner, Sec-

tion 5661, General Code, is amended and reenacted, providing in the first clause that contracts or agreements entered into contrary to the provisions of the preceding section shall be null and void, and—"No claim or demand thereon shall be recoverable from any county or other political subdivision or taxing district, or from any public funds."

The board of education is a body politic (see Section 4749, General Code). Section 4757, General Code, provides that—

"Conveyances made by a board of education shall be executed by the president and clerk thereof. No member of the board shall have, directly or indirectly, any pecuniary interest in any contract of the board, or be employed in any manner for compensation by the board of which he is a member, except as clerk or treasurer. *No contract shall be binding upon any board unless it is made or authorized at a regular or special meeting of such board.*"

The statutory restrictions upon the contracting power of boards of education are so explicit and so clearly stated that there would seem to be no ground for claiming that even in a case where the contract was for an amount which could not be exactly estimated in advance, these statutes should be disregarded. Certainly after the first, or second year proper estimates could be made and included so as to comply with the statutes with reference to certificates of funds in the treasury for the purposes required.

The principal source of revenue for the support of the public schools is by taxation, which is annual, and in which the taxing authorities must estimate the revenue necessary to be raised. This is provided as to the school district and evidently such estimates did not include the charges for water furnished to the schools.

Is the city in any different position from any other person contracting with the board of education under these restrictive statutes?

The city is limited and restricted by the same statutes; it knows the statutes; should it be permitted now to say that they do not apply to a case in which the city is seeking to recover from the board of education for water supplied to the schools in violation of such statutes?

Is there any reason why the city in this case should be entitled to recover on a *quantum meruit* which was denied to individuals in the same position as the city?

For the purposes of this case the municipality and the school district are co-terminous. The inhabitants of the city and the school district as limited in this case, are identical.

If a city could be allowed to retain property furnished by an individual under a void contract, and not be held to answer on an account or for conversion of such property, should the board of education be required to answer for an action for water furnished by the city for its schools, in violation of the same statutory restrictions?

If the board of education is now required to raise taxes to pay for these accounts rendered as stated, it will simply mean the taxation of the citizens of the school district for the benefit of the citizens of the municipality, which as stated are the identical people.

On behalf of the plaintiff it is claimed that, regardless of the cases heretofore referred to, the board of education is liable under the provisions of Sections 280 and 286-1, 286-3, General Code. Section 280, General Code, is as follows:

"All certificates rendered and property transferred from one institution, department, improvement or public service industry to another shall be paid for at its full value. No institution, department, improvement or public service industry shall receive financial benefit from any appropriation made or fund created for the support of another. When an appropriation account is closed, an unexpended balance shall revert to the fund from which the appropriation was made."

It does not seem that this section was to bear any relation whatever to dealings between a municipality and its board of education. It must be remembered that Sections 280 and 3963, General Code, existed together for a long period, and on the question of the legislative intent it is perfectly clear that the legislature could not have intended by Section 3963, General Code, to provide that cities should not charge for furnishing water to schools, and at the same time provide by Section 280, General Code, that the city could charge the schools for water furnished. Regardless of the constitutionality of Section 3963, General

Code, the legislature would not have imputed to it such conflicting and contrary purposes.

The court is therefore of the opinion that Section 280, General Code, does not apply to the situation in hand.

So far as Sections 286-1 and 286-3 are concerned, it is perfectly clear that this action was not brought under those sections, and there is nothing in the petition to indicate that the foundation required for actions under those sections existed.

It has been suggested that the action on account may be sustained under Sections 2956 and 3958, General Code. These sections are as follows:

"The director of public service shall manage, conduct and control the public works, furnish supplies of water, collect water rents and appoint necessary officers and agents.

"For the purposes of paying the expenses of conducting and managing the water works, such director may assess and collect from time to time a water rent of sufficient amount, in such manner as he deems most equitable, upon all tenements and premises supplied with water. When more than one tenant or water taker is supplied with one hydrant or by the same pipe, and when the assessments therefor are not paid when due, the director shall look directly to the owner of the property for so much of the water rent as remains unpaid, which shall be collected in the same manner as other city taxes."

Again it must be kept in mind that these provisions are a part of the same chapter on "Water Works," and dealing with the right of the city to charge for water furnished to the public schools. In passing the sections quoted above, the legislature did not and could not have had in mind that those sections could ever apply to collecting water rents from boards of education; but again it must be kept in mind, regardless of the provisions of Section 3958, that the board of education is under statutory restrictions as to the making of contracts or agreements, and the paying out of the money coming into its control by taxation, and where those restrictive statutes are violated, there is no legal obligation on the board of education to pay on accounts such as rendered in this case.

The court is therefore of the opinion that judgment should be entered for the defendant.